

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-06-472-CV

GERALD W. HADDOCK                                        APPELLANT

V.

WILLIAM F. QUINN, PAUL E. ROWSEY, III,                  APPELLEES
JOHN GOFF, TERRY N. WORRELL,
CRESCENT REAL ESTATE EQUITIES
COMPANY, CRESCENT REAL ESTATE
LIMITED PARTNERSHIP AND CRESCENT
REAL ESTATE EQUITIES, LTD.

------------

## FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

------------

## AND

## NO. 2-07-048-CV

IN RE GERALD W. HADDOCK                                  RELATOR

------------

## ORIGINAL PROCEEDING

------------

## OPINION

I.     **Introduction**

In this consolidated interlocutory appeal and mandamus proceeding, Relator and Appellant Gerald W. Haddock seeks relief from the trial court's order staying arbitration proceedings that he initiated against Appellees and Real Parties in Interest William F. Quinn, Paul E. Rowsey, III, John Goff, Terry N. Worrell, Crescent Real Estate Equities Company ("CEI"), Crescent Real Estate Equities Limited Partnership ("CREELP"), and Crescent Real Estate Equities, Limited ("CREE").

Haddock raises three issues. In his first issue, Haddock argues that the trial court improperly assumed jurisdiction because the parties contracted to have all issues—including questions of arbitrability—decided by arbitration. Second, Haddock contends that even if the trial court had jurisdiction to decide some issues of arbitrability, the main issue in this case—whether he repudiated or waived arbitration—should be decided by an arbitrator. Third, Haddock argues that the trial court erred and abused its discretion by concluding that he repudiated or waived arbitration by engaging in prior litigation that was inconsistent with arbitration.

Real Parties in Interest contend that the issue of repudiation or waiver was properly for the court to decide and that the trial court correctly determined that Haddock repudiated, or in the alternative waived, arbitration of his claims

2

by substantially invoking the judicial process to their detriment. They argue that the trial court correctly concluded that the remaining claims asserted by Haddock, individually and derivatively on behalf of CEI stockholders and against nonsignatories, are not within the scope of the arbitration agreement.

## II.     Factual and Procedural Background

### A.     The Parties

#### 1.     The Crescent Entities

CEI is a publicly held real estate investment trust (commonly referred to as a "REIT") organized under the laws of the state of Texas. CEI is structured as an Umbrella Partnership Real Estate Investment Trust whereby CEI owns a majority of the limited partnership interests in CREELP, a Delaware limited partnership. This organizational structure (referred to as an "UPREIT") allows owners of investment real estate to sell their properties to CREELP in exchange for CREELP units, which the seller may later convert into CEI common stock. The real estate owners incur no income tax liability until they sell the stock. CREE, a Delaware corporation, is a wholly owned subsidiary of CEI and serves as CREELP's general partner.

3

### 2. The Individuals

In 1994, Haddock and two cofounders created the Crescent Entities and related companies. Prior to 1994, Haddock had served in various capacities in companies formed by one of the cofounders, including serving as lead transactional attorney and chief negotiator. Of the individual Real Parties in Interest, John Goff currently serves as CEI's CEO and Vice Chairman. William Quinn, Paul Rowsey III, and Terry Worrell serve as members of CEI's Board of Trust Managers.

### B. The CREELP Partnership Agreement and Arbitration Clause

In February 1994, Haddock, as CEI's President, signed a limited partnership agreement on behalf of CEI, CREE, and several limited partners to form the CREELP limited partnership. CREE was CREELP's general partner. Haddock became a limited partner in CREELP as well as President of CEI, and he became CEO of CEI in 1996. As an officer and senior management employee, Haddock received options to purchase units in CREELP in 1995 and 1996, which were exchangeable for CEI common stock. The options for both the CREELP units and CEI stock were created by incentive plans adopted by those entities' respective governance committees.

The original CREELP limited partnership agreement did not contain an arbitration agreement. However, in May 1994, the limited partnership

4

agreement was amended to add an arbitration agreement that provides, in pertinent part:[1]

> Section 16.1        Arbitration
>
> Notwithstanding anything to the contrary contained in this Agreement, all claims, disputes and controversies between the parties hereto (including, without limitation, any claims, disputes, and controversies between the Partnership and any one or more of the Partners and any claims, disputes and controversies among any two or more Partners) arising out of or in connection with this Agreement or the Partnership created hereby, relating to the validity, construction, performance, breach, enforcement or termination thereof, or otherwise, shall be resolved by binding arbitration in the State of Texas, in accordance with this Article 16 and, to the extent not inconsistent herewith, the Expedited Procedures and Commercial Arbitration Rules of the American Arbitration Association.

The arbitration agreement contains additional paragraphs of detailed procedures to be followed in any arbitration proceedings under the agreement, including an expedited schedule for selection of an arbitration panel, for commencement and completion of the arbitration proceeding within sixty days after selection, and for rendition by the panel of its award within thirty days thereafter.

---

[1] Each of several amended partnership agreements contain the identical arbitration provision.

### C. The Severance Agreement

In June 1999, Haddock resigned from his executive positions and entered into a confidential severance agreement with CEI and CREELP, which provided for him to receive certain cash compensation and which, together with simultaneously executed amended unit option and stock option agreements, accelerated the vesting of certain of his CREELP unit options and CEI stock options that he had previously received as part of his compensation. The agreement called for Haddock to relinquish all of his remaining unvested unit options and stock options. Paragraph 13 of the severance agreement (the "unfavorable-comments clause") restricted both Haddock and the Crescent Entities from making unfavorable comments about the other or about Haddock's job performance. The severance agreement did not contain an arbitration clause.

### D. The Prior Lawsuit

In March 2005, Haddock filed a suit for a declaratory judgment and for temporary and permanent injunctions against the Crescent Entities in the 17th District Court of Tarrant County, Texas. Haddock pleaded his prior status as CEO and President of CEI, CREE, and other related entities referred to in his petition as "the Employer Group," that he and the Employer Group had agreed to terminate his employment relationship in June 1999, and that the parties had

6

entered into a confidential severance agreement that he would file under seal with the court. Haddock stated that as consideration for his resignation from all directorships and offices held in the Employer Group, the severance agreement provided that, in addition to stock and units in CEI and CREELP that he already owned, he was promised certain cash compensation as well as the accelerated vesting of certain stock and partnership unit options and that he thereby became immediately vested in a large number of stock and unit options in both CEI and CREELP.

In his petition, Haddock further explained that he had become "concerned" that the Crescent Entities were being managed and operated adversely to interests of shareholders and unitholders by offering executives excessive compensation packages and risky loans that seriously jeopardized the financial health and stability of the entities. Haddock alleged that he desired to discuss these concerns with fellow shareholders and unitholders and to further investigate but feared that doing so might be construed by the Crescent entities as a breach of the unfavorable comments clause in the severance agreement. Haddock alleged that he had received threats that the Crescent Entities would forfeit his options as a result of his conduct in discussing those matters and exposing their "questionable practices."

Haddock sought to clarify or reform the severance agreement by a declaratory judgment that the unfavorable comments clause of the severance agreement was void or limited to statements rising to the level of actionable defamation. He also sought and obtained a temporary restraining order against the Crescent Entities from "[t]hreatening or taking any action to declare forfeited or interfere with" his rights in any shares of CREE or CREELP, already owned by him or shares or units subject to an unexercised option held by him. The restraining order granted by the trial court also provided that all parties were to abide by the unfavorable-comments clause. The parties later agreed to an order extending the temporary restraining order until the date of trial, originally scheduled for August 29, 2005.

The Crescent Entities filed a counterclaim asserting that Haddock had breached the terms of both the severance agreement and a subsequent 2001 settlement agreement, general release, and covenant not to sue for claims and causes of action in any way connected with his prior employment or termination.

In June 2005, Haddock filed a motion to clarify or modify the temporary restraining order, alleging that he proposed to exercise his rights as a unitholder in CREELP and the right to have the value of his options adjusted in accordance with "relevant agreements and plans" under which the options were created.

8

Haddock alleged in that motion that he had reason to believe he had one or more common law and statutory causes of action against the Crescent Entities related to management and desired "to assert these claims in this suit, or in another suit." Haddock requested in his motion that the court remove all doubt that filing those lawsuits would not violate the terms of the severance agreement and that it either clarify or modify the temporary restraining order to permit him to file the lawsuits.

Haddock subsequently filed two motions for summary judgment, one as to the enforceability of the severance agreement and the other as to the Crescent Entities' counterclaim; the Crescent Entities likewise moved for summary judgment. After a two-day hearing, the trial court signed a final judgment on December 1, 2005, ordering that Haddock and the Crescent Entities take nothing on their respective claims and counterclaims. Haddock appealed to this court from the take-nothing summary judgment against him, but he later moved to dismiss the appeal, and we dismissed it on April 6, 2006. *See Haddock v. Crescent Real Estate Equities Co.*, No. 02-06-00096-CV, 2006 WL 909470, at *1 (Tex. App.—Fort Worth Apr. 6, 2006, no pet.).

E.    **The Arbitration Demand**

On December 6, 2005, six days after the trial court signed its final judgment, Haddock wrote to the CEI Compensation Committee, requesting that

it adjust the exercise price for his options pursuant to the antidilution provisions of the stock and unit option plans, which request was refused. Thereafter, according to Haddock, CREELP and CEI continually refused to allow him to exercise CREELP unit options and to exchange them for CEI stock.

On July 10, 2006, Haddock filed a forty-three page Statement of Claims with the American Arbitration Association under the arbitration provision contained in the CREELP limited partnership agreement. In his Statement of Claims, Haddock asserted causes of action against all of the Crescent Entities as well as the individual Real Parties in Interest for breach of contract, breach of the duty of good faith and fair dealing, violation of securities laws, and breach of fiduciary duty. As in his prior suit, Haddock set forth the events regarding his resignation as director and officer from the Crescent Entities in 1999, and alleged that since that time, those entities' operations had declined and the entities had begun to liquidate their real estate properties, using the proceeds to continue to award extraordinary dividends to stockholders, thereby diluting the value of his CREELP unit options.

Haddock further alleged that the Entities' Compensation Committee refused to adjust the exercise price of his options as provided by anti-dilution provisions in the option agreements, prevented him from converting his options to CEI common stock, and refused to allow him to exercise his options with a

10

recourse promissory note as provided by the CREELP unit option agreement, resulting in damages of over $8.2 million. Haddock also asserted a claim, in a derivative capacity on behalf of CEI shareholders, asserting that loans to company insiders violated the Sarbanes-Oxley Act, resulting in damages to the shareholders of at least $39.7 million, including lost interest. He named Quinn, Rowsey, and Worrell as parties based upon their service on a Special Litigation Committee for the Crescent Entities that refused his demand regarding the derivative claim.

F.    The Underlying Proceeding

Real Parties in Interest filed this action in the 67th District Court of Tarrant County seeking a stay of the arbitration proceedings and a declaratory judgment that Haddock had repudiated the CREELP arbitration agreement by filing his March 2005 suit and proceeding to a final judgment rather than arbitrating the issues in that case and that the remaining claims were not within the scope of the arbitration agreement. Haddock answered with a general denial and a plea to the jurisdiction asserting that the trial court lacked jurisdiction to decide any issues of arbitrability, including waiver or repudiation. Alternatively, he asserted that even if the court had jurisdiction over some arbitrability issues, its jurisdiction was limited in scope and did not allow it to decide the waiver or repudiation issue.

11

After a hearing on the application to stay arbitration, the trial court—the presiding judge being the same judge who had earlier entered the temporary restraining order in the prior suit, sitting for the regular judge of the 17th District Court—signed an order granting the stay and permanently enjoining Haddock from pursuing his arbitration demand.  After Haddock perfected his appeal in this case, the trial court filed findings of fact and conclusions of law, finding that Haddock had repudiated the CREELP arbitration agreement by litigating the March 2005 suit to a final judgment, that he was estopped from relying on the arbitration agreement, that Real Parties in Interest accepted that repudiation by defending against Haddock's claims and filing a counterclaim, and that Real Parties in Interest suffered prejudice.

Haddock seeks review of the trial court's order both by petition for writ of mandamus and by interlocutory appeal.  We have consolidated the two proceedings for a decision disposing of both simultaneously.  *See In re Valero Energy Corp.*, 968 S.W.2d 916, 916–17 (Tex. 1998) (orig. proceeding).  The trial court has stayed all proceedings in this case pending the outcome of the mandamus proceeding and interlocutory appeal.

12

## III. Discussion

### A. Mandamus or Interlocutory Appeal?

The parties agree that the Federal Arbitration Act ("FAA") applies to the arbitration agreement in this case. *See generally* 9 U.S.C. §§ 1–16 (West 2009). A party seeking relief pursuant to the FAA from a denial or stay of arbitration must pursue relief by way of petition for writ of mandamus. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 780 (Tex. 2006) (orig. proceeding) ("Mandamus is proper to correct a clear abuse of discretion when there is no adequate remedy by appeal, . . . as when a party is denied its contracted-for arbitration rights under the FAA."); *In re Valero Energy Corp.*, 968 S.W.2d at 917 (holding mandamus available for denial of arbitration because party has no remedy by appeal under FAA); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992) (orig. proceeding); *see also W. Dow Ham III Corp. v. Millennium Income Fund, L.L.C.*, 237 S.W.3d 745, 751 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding mandamus only means of reviewing order granting stay of arbitration). Therefore, we will dismiss the interlocutory appeal for want of jurisdiction and proceed to determine whether Haddock as Relator is entitled to mandamus relief. *See* Tex. R. App. P. 42.3(a), 43.2(f).

**B.    Standard of Review**

Mandamus will issue to correct a clear abuse of discretion for which the remedy by appeal is inadequate. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004). A trial court has no discretion in determining what the law is or in applying the law to the facts, and a clear failure to analyze or apply the law correctly will constitute an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). When a motion to compel arbitration under the FAA has been erroneously denied or when a motion to stay arbitration is erroneously granted, there is no adequate remedy by appeal, and mandamus will issue. *In re D. Wilson Constr. Co.,* 196 S.W.3d at 780; *see also In re Nexion Health at Humble, Inc*., 173 S.W.3d 67, 69 (Tex. 2005) (orig. proceeding) (per curiam).

A party seeking to enforce an arbitration agreement must establish the existence of a valid arbitration agreement and show that the claims in dispute fall within the scope of that agreement. *In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007) (orig. proceeding) (per curiam); *In re Kellogg Brown & Root, Inc*., 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding); *see BWI Cos., Inc. v. Beck*, 910 S.W.2d 620, 621 (Tex. App.—Austin 1995, orig. proceeding). In determining the validity of arbitration agreements under the

14

FAA, we generally apply state-law principles governing the formation of contracts. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924 (1995)).

Once the moving party establishes the existence of a valid arbitration agreement, the trial court then determines whether the nonmovant's claims fall within the scope of the arbitration clause. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). If the trial court determines that a valid arbitration agreement exists, the burden shifts to the party opposing arbitration to prove its defenses. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). Whether a valid arbitration agreement exists is a legal question subject to de novo review. *In re D. Wilson Constr. Co.*, 196 S.W.3d at 781.

### C.    The Arbitration Agreement

Haddock contends by his first issue that repudiation and waiver are matters of substantive arbitrability and that the parties clearly and unmistakably agreed to have all issues, including questions of arbitrability, decided by an arbitrator. Therefore, he asserts, the trial court lacked jurisdiction to decide the issues of repudiation and waiver. Real Parties in Interest contend that no valid

15

arbitration agreement continued to exist because Haddock "repudiated" it by filing the prior lawsuit. They argue that when Haddock commenced the prior lawsuit, the Crescent Entities were put to an "election" to either terminate or insist on performance of the arbitration agreement and that, by filing a counterclaim and allowing the prior lawsuit to go to final judgment, the Crescent Entities and Haddock mutually terminated the arbitration agreement.

### 1.    The issue is waiver, not repudiation by election.

In findings of fact[2] and conclusions of law that it entered after the parties filed their briefs in this court and that have not been challenged by either party, the trial court found in favor of Real Parties in Interest that Haddock

---

[2] When an abuse of discretion standard of review applies to a trial court's ruling, findings of fact and conclusions of law aid us in reviewing the propriety of the ruling by providing us with an explanation for the ruling. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 852 (Tex. 1992); *Samuelson v. United Healthcare of Tex., Inc.*, 79 S.W.3d 706, 710 (Tex. App.—Fort Worth 2002, no pet.). But while findings of fact and conclusions of law can be helpful in applying the abuse of discretion standard, they are not required. *Samuelson*, 79 S.W.3d at 710. To determine whether a trial court abused its discretion, we must decide whether it acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986). Any factual issues decided by the court in reaching the decision under review are not reviewed by legal- and factual-sufficiency standards, although when the decision under review is based on facts determined by the court, those facts must have some support in the evidence. *Crouch v. Tenneco, Inc.*, 853 S.W.2d 643, 649 & n.2 (Tex. App.—Waco 1993, writ denied) (op. on reh'g). However, neither party has challenged the trial court's findings of fact in this case.

16

repudiated the Arbitration Agreement by filing and prosecuting the Prior Lawsuit to a final judgment. The Crescent Entities accepted that repudiation by defending against Haddock's claims . . . and by prosecuting a counterclaim. The Arbitration Agreement ceased to exist as between these parties on or before April 6, 2006, the date Haddock dismissed his appeal of the Prior Lawsuit.[3]

To support their argument that Haddock repudiated the arbitration agreement, Real Parties in Interest rely on *Vireo, P.L.L.C. v. Cates*, 953 S.W.2d 489, 491 (Tex. App.—Austin 1997, pet. denied). In *Vireo*, the Austin court held that when a plaintiff filed suit on an arbitrable claim, the defendant had an election to insist or not on arbitration; when the defendant elected not to arbitrate, the parties therefore mutually repudiated the arbitration agreement. *Id.*

Although the Supreme Court of Texas has not spoken on this issue, *Vireo's* approach, that of "mutual repudiation and waiver based on election" when a plaintiff files suit and then seeks arbitration, has been rejected by this court on two occasions as well as by other Texas courts of appeals. *See Grand Homes, 96, LP v. Loudermilk*, 208 S.W.3d 696, 704 (Tex. App.—Fort Worth 2006, pet. denied) (noting that *Vireo* holding would undermine policy promoting arbitration and observing that TGAA was enacted to abrogate common law

---

[3] The facts in this case are undisputed. Relator's position is that the trial court misapplied the law to the facts and abused its discretion. *See In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 780 (Tex. 2006).

"right of election" doctrine in arbitration context); *see also Wee Tots Pediatrics v. Morohunfola*, 268 S.W.3d 784, 792 n.4 (Tex. App.—Fort Worth 2008, no pet.) (again declining to follow *Vireo*); *Practicehwy.com, Inc. v. Albany IVF Fertility and Gynecology, PLLC*, No. 05-06-00222-CV, 2006 WL 2960838, at *3 (Tex. App.—Dallas Oct. 18, 2006, no pet.) (mem. op.) (rejecting *Vireo* as conflating repudiation and waiver). We decline to revisit this issue. We hold that the trial court abused its discretion by basing its order staying arbitration on mutual repudiation of the arbitration agreement. However, this is but the beginning of our inquiry.

In addition to asserting repudiation, Real Parties in Interest contend that Haddock waived the arbitration agreement by inconsistent conduct in the prior lawsuit that resulted in prejudice to them. The trial court made additional findings that Haddock's conduct in filing and prosecuting the prior lawsuit to final judgment substantially invoked the litigation process and prejudiced the Crescent Entities. In *Perry Homes v. Cull*, handed down after briefs were filed and after submission in this court, the Supreme Court of Texas extensively addressed the defense of waiver of arbitration by substantially invoking the judicial process to the other party's detriment or prejudice. 258 S.W.3d 580, 589–90 (Tex. 2008), *cert. denied*, 129 S. Ct. 952 (2009). By postsubmission supplemental briefs, the parties have joined issue on whether Haddock waived

18

his right to arbitration by inconsistent litigation conduct, although Real Parties in Interest still say this is an issue of both waiver and repudiation.[4]

> 2. The trial court has jurisdiction to decide waiver.

As a threshold issue, Haddock argues that the trial court lacked subject matter jurisdiction to decide the issue of waiver. Federal and state courts have concurrent jurisdiction to enforce the FAA. *In re Palacios*, 221 S.W.3d 564, 565 (Tex. 2006) (orig. proceeding); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 n.32, 103 S. Ct. 927, 942 n.32 (1983)). Waiver in the context of this case is a question of arbitrability, and who decides arbitrability is a matter of contract interpretation regarding the division of labor or responsibility between the court and the arbitrator, not jurisdiction. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S. Ct. 588, 592 (2002) (characterizing presumption that questions of arbitrability are to be presented to court unless parties have clearly and unmistakably agreed otherwise as "interpretive rule"); *Marie v. Allied Home Mtg. Corp.*, 402 F.3d 1, 3 (1st Cir.

---

[4] Indeed, Haddock has argued from the outset that "repudiation" and "waiver" in the context of a party's litigation conduct that is inconsistent with arbitration have no substantive difference.

19

2005) (noting question of who decides waiver is one of "division of labor" between courts and arbitrators).

We recently decided this very issue against Haddock's position in another case. *Nw. Constr. Co. v. Oak Partners, L.P.,* 248 S.W.3d 837, 847 (Tex. App.—Fort Worth 2008, pet. denied) (holding question of who decides issue of waiver of arbitration not one of subject matter jurisdiction). We hold that the trial court had jurisdiction to decide the issue of waiver.[5]

### 3. Who decides the question of waiver by inconsistent conduct?

Haddock next argues that who decides the question of waiver is a matter of contract and that the parties to this arbitration agreement clearly and unmistakably referred all questions of arbitrability to an arbitration panel.[6] We agree that "arbitration is a matter of contract." *Howsam*, 537 U.S. at 83, 123 S. Ct. at 591. The question of "'who has the primary power to decide

---

[5] Although the trial court did not make an explicit finding or conclusion as to whether it possessed the power to determine the issue of waiver, it implicitly so concluded because it proceeded to determine the essential elements of waiver against Haddock.

[6] The limited partnership agreement requires that Delaware law be used when construing the agreement, specifically including the arbitration agreement. The parties agree that, to the extent that any state substantive law applies, Delaware law "mirrors federal law." When applying the FAA, Texas courts also look to federal law to decide substantive issues. *Jack B. Anglin Co.,* 842 S.W.2d at 271–72. We thus look to federal law to determine this issue.

20

arbitrability' turns upon what the parties agreed about that matter." *First Options,* 514 U.S. at 944, 115 S. Ct. at 1923.

There is a "qualification" to that general rule, which is also an exception to the liberal policy favoring arbitration agreements. *Howsam*, 537 U.S. at 83, 123 S. Ct. at 591. "The question whether the parties have submitted a particular dispute to arbitration, i.e., *the question of arbitrability*, is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Id.* (quoting *AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649, 106 S. Ct. 1415, 1418 (1986)); *see also First Options*, 514 U.S. at 944, 115 S. Ct. at 1924; *In re Weekley Homes, L.P.,* 180 S.W.3d 127, 130 (Tex. 2005) ("[A]bsent unmistakable evidence that the parties intended the contrary, it is the courts rather than the arbitrators that must decide 'gateway matters,' such as whether a valid arbitration agreement exists.").

In *First Options*, the Supreme Court noted, in discussing the "clear and unmistakable evidence" requirement, that "the law treats silence or ambiguity about the question '*who* (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question *whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement,'" so as to not "force unwilling parties to arbitrate a

21

matter they reasonably would have thought a judge, not an arbitrator, would decide."  514 U.S. at 944–45, 115 S. Ct. at 1924–25.

### a. No "clear and unmistakable" evidence of agreement to delegate questions of arbitrability to arbitrator

Haddock argues that the arbitration agreement of the limited partnership agreement "clearly and unmistakably" delegates arbitrability issues, including waiver, to an arbitration panel by expressly incorporating the Commercial Arbitration Rules of the American Arbitration Association ("AAA").  Specifically, Haddock relies upon Rule 7(a) of those rules, which provides that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement."  American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, R7, http://www.adr.org/sp.asp?id = 22440#R7 (last accessed February 25, 2009).

Real Parties in Interest respond that the supreme court in *Perry Homes* has now decided, contrary to Haddock's position, that the issue of waiver in a case governed by the FAA is for the court, not an arbitrator.  258 S.W.3d at 587.  Although we agree that this was the holding in *Perry Homes,* the arbitration agreement at issue in that case contained no reference to the AAA rules.  And the supreme court in that case noted, albeit in another section of its

opinion, that there was no indication in that contract that the parties had "clearly and unmistakably agreed" that the arbitrator should decide arbitrability. *Id.* at 587, n.15 (citing *First Options*, 514 U.S. at 947–48, 115 S. Ct. at 1924). Therefore, we do not read *Perry Homes* as abandoning the "clear and unmistakable" qualification to the presumption that the court is to decide issues of arbitrability.

The majority of courts have concluded that express incorporation of rules empowering the arbitrator to decide arbitrability (including ruling upon his or her own jurisdiction) clearly and unmistakably evidences the parties' intent to delegate issues of arbitrability to the arbitrator. *See, e.g., Qualcomm Inc. v. Nokia Corp.,* 466 F.3d 1366, 1372–73 (Fed. Cir. 2006) (holding incorporation of AAA rules, including Rule 7(a), clearly and unmistakably showed parties' intent to delegate issue of arbitrability to arbitrator); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2nd Cir. 2005) (holding that incorporation of AAA Rules, including Rule 7(a), clearly and unmistakably evinced intent for arbitrator to decide whether nonsignatory party bound by arbitration agreement); *Terminix Int'l Co., L.P. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332–33 (11th Cir. 2005) (holding by incorporating AAA Rules into agreement, parties clearly and unmistakably agreed arbitrator should decide whether arbitration clause was valid); *Citifinancial, Inc. v. Newton*, 359

23

F. Supp.2d 545, 549–52 (S.D. Miss. 2005) (same); *see also Burlington Res. Oil & Gas Co. L.P. v. San Juan Basin Royalty Trust*, 249 S.W.3d 34, 40 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (collecting cases).

But the majority view does not "mandate that arbitrators decide arbitrability in all cases where an arbitration clause incorporates the AAA rules." *San Juan Basin,* 249 S.W.3d at 42 (quoting *James & Jackson, LLC v. Willie Gary, LLC,* 906 A.2d 76, 78, 80 (Del. 2006)). Haddock points out that, in *James & Jackson*, the Delaware Supreme Court adopted the majority federal rule that incorporation of AAA rules requires submission of issues of arbitrability to the arbitrator rather than the court. 906 A.2d at 80–81. However, the court in that case also held that this rule would only apply in cases where (1) an arbitration clause generally provides for arbitration of *all* disputes and also (2) incorporates a set of arbitration rules that empowers arbitrators to decide arbitrability. *Id*. Because the arbitration agreement there did not generally provide for arbitration of all disputes but expressly allowed the parties to seek injunctive relief and specific performance in the courts, the court held that something other than mere incorporation of AAA rules would be needed in order to establish clear and unmistakable intent to delegate issues of arbitrability to the arbitrator. *Id*. at 81.

In *Marie v. Allied Home Mortgage Corp.*, the arbitration clause referred to binding arbitration "any and all disputes, claims (whether in tort, contract, statutory, or otherwise), and disagreements concerning the interpretation or application of this Agreement . . . *including the arbitrability of any such controversy or claim.*" 402 F.3d at 14-15. The First Circuit in that case acknowledged that, while the issue of waiver by litigation conduct is presumptively for the court, the parties may by agreement shift the waiver issue to an arbitrator by clear and unmistakable expression of intent in the agreement. *Id.* at 14 (citing *First Options*, 514 U.S. at 945, 115 S. Ct. at 1925). But the court held in that case that express delegation of "arbitrability" issues to the arbitrator in the arbitration agreement at issue there did not evince "clear and unmistakable" intent for the arbitrator to decide the issue of waiver by litigation conduct. *Id.* at 15. The court in *Marie* noted that the arbitration agreement at issue there also incorporated the AAA rules but that it was silent regarding whether the issue of waiver or any similar issue was intended to be referred to an arbitrator. *Id.*

The court in *Marie* did not expressly decide the effect of the incorporation of the AAA rules but broadly held as follows:

> We cannot say that the use of the term [arbitrability] here evinces a clear and unmistakable intent to have waiver issues decided by the arbitrator. There are no references to waiver or

25

similar terms anywhere in the arbitration agreement. Neither party should be forced to arbitrate the issue of waiver by conduct without a clearer indication in the agreement that they have agreed to do so. The issue of who would decide such a question is an 'arcane' one that employees are unlikely to have considered unless clearly spelled out by the employer.

*Id.*

The Third Circuit has followed *Marie* in *Ehleiter v. Grapetree Shores, Inc.*, holding that waiver by litigation conduct inconsistent with arbitration is presumptively an issue for the court. 482 F.3d 207, 222 (3rd Cir. 2007). It additionally held that, even though the arbitration agreement there expressly stated that all claims or matters arising out of or relating in any fashion to the agreement "shall be considered arbitrable" including "the issue of arbitrability of any claim or dispute," the agreement did not manifest a clear and unmistakable intent to have an arbitrator decide the issue of waiver based on litigation conduct. *Id*. at 221. The court reasoned:

[W]e do not believe that this provision . . . evidences a clear and unmistakable intent to have an arbitrator decide procedural questions of arbitrability that arise only after the parties have bypassed a gateway determination of substantive arbitrability by the arbitrator and actively litigated the underlying dispute in court.

*Id.* at 222. The court in *Ehleiter* also noted that there was no reference to waiver of arbitration in the agreement. *Id*. That court refused to interpret the agreement's "silence regarding who decides the waiver issue" as giving

26

arbitrators that power "'for doing so . . . [would] force [an] unwilling part[y] to arbitrate a matter [he] reasonably would have thought a judge, not an arbitrator, would decide.'" *Id.* (quoting *First Options*, 514 U.S. at 945, 115 S. Ct. 1920); *see also San Juan Basin,* 249 S.W.3d at 41–42 (reasoning that, although reference to AAA rules might otherwise be construed as "clear and unmistakable intent" to refer arbitrability issues to arbitrator, language of agreement was silent as to referral of "arbitrability" issues to arbitrator and limiting language of agreement negated such intent); *In re Ford Motor Co.*, 220 S.W.3d 21, 23 (Tex. App.—San Antonio 2006, orig. proceeding) (holding, despite reference to AAA rules, that agreement did not clearly and unmistakably evidence intent that issue of whether a nonparty was bound by arbitration agreement be decided by arbitrator).

Haddock seeks to distinguish *Marie* on the basis that the conduct constituting waiver arose in the same litigation in that case, as contrasted with the prior litigation instituted by Haddock in a different court.[7] We disagree. The conduct found to constitute waiver in *Marie* was in a separate proceeding in a different litigation forum, the EEOC. *Marie*, 402 F.3d. at 14.

---

[7] Haddock does not discuss the differences between or attempt to distinguish *Ehleiter* or *James & Jackson* from this case.

Haddock also argues that the First Circuit held that sending the waiver issue to the arbitrator in *Marie* would be "exceptionally inefficient" given that the case started in court, whereas Haddock claims this matter began with a demand for arbitration so that the issue of waiver could more easily be resolved in that forum. To the contrary, the conduct complained of by Real Parties in Interest started when Haddock instituted and pursued his *prior* litigation to an adverse decision in court. As the court in *Marie* recognized, "[i]f the arbitrator were to find that the defendant had waived its right to arbitrat[ion], then the case would inevitably end up back in court." *Id*. at 13. The same would be true here.

Finally, Haddock argues that *Marie* did not address the incorporation of the AAA rules into the arbitration agreement. But the court clearly considered that language, because it specifically pointed out that the agreement so stated; yet the court found no clear and unmistakable evidence of intent in the agreement to shift the issue of waiver to the arbitrator. *Id*. at 14.

Additionally, as in the *San Juan Basin* and *James & Jackson* cases, the arbitration agreement here is not unequivocal but contains limiting language with regard to the incorporation of the AAA rules, incorporating those rules "to the extent not inconsistent" with the remainder of the detailed provisions of the

28

arbitration agreement, which contains five sections and ten paragraphs of information prescribing the procedure and scope of any arbitration.

We also note that there is no designation in the arbitration agreement here as to which version of the AAA rules is to apply, the version in existence when the agreement was made or that in existence at the time of the dispute. Haddock acknowledges that the rule now designated as Rule 7(a), upon which he relies, did not exist when the arbitration agreement was added to the limited partnership agreement in 1994. Although, as Haddock points out, the partnership agreement has been amended several times since its inception without change to the arbitration agreement language, we cannot assume from silence in the agreement as to the issue of arbitrability or as to which version of the AAA rules is to apply, that the parties intended to incorporate Rule 7(a), which did not exist when the arbitration agreement was added. *See Marie*, 402 F.3d at 15; *see also Ehleiter*, 482 F.3d at 222.

Silence is not "clear and unmistakable evidence" of intent. The agreement is silent as to whether the parties intended to incorporate the current rules, silent as to whether the arbitrator is to decide issues of "arbitrability," and silent specifically regarding who is to decide waiver, repudiation, or similar matters. We hold that the general reference in the arbitration agreement to the

29

AAA rules, without more, does not clearly and unmistakably manifest these parties' intent to refer the issue of waiver by litigation conduct to the arbitrator.

### b. Substantial invocation of the litigation process still an issue for the court after *Howsam*

By part of his second issue, Haddock argues that, even if this court concludes that the trial court had power to consider some arbitrability issues, the trial court lacked power specifically to decide the waiver issue, based upon language contained in the United States Supreme Court's decision in *Howsam v. Dean Witter Reynolds Inc.,* which stated that the "presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.'" 537 U.S. at 84, 123 S. Ct. at 592 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25, 103 S. Ct. at 941). In *Perry Homes,* the Culls made the identical argument made here by Haddock, asserting that whether a party has waived the right to arbitrate by litigation conduct is an issue to be decided by the arbitrator, rather than the court, based upon the same language from *Howsam*. 258 S.W.3d at 588–90. The supreme court in *Perry Homes* rejected that argument, flatly stating,

> Every federal court that has addressed this issue since *Howsam* has continued to hold that substantial invocation of the litigation process is a question for the court rather than the arbitrator—including the First, Third, Fifth, and Eighth Circuit. Legal commentators appear to agree. So do we.

*Id.* at 589; *see JPD, Inc. v. Chronimed Holdings, Inc*., 539 F.3d 388, 393–94 (6th Cir. 2008) (holding *Howsam* limited to contractually based waiver, not waiver by litigation conduct inconsistent with arbitration); *Ehleiter*, 482 F.3d at 217; *Marie,* 402 F.3d at 13–14; *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344–47 (5th Cir. 2004)*; Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.,* 97 Fed. Appx. 462, 464 (5th Cir. 2004).  We overrule that portion of Haddock's second issue.

### c.    The "No-Waiver" Rule

Haddock also argues that Rule 48-(a) of the AAA rules incorporated into the arbitration agreement is a factor to be taken into consideration in determining whether he waived the agreement.  That rule provides, "No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of a party's right to arbitrate."   American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, R48, http://www.adr.org/sp.asp?id = 22440#R48 (last accessed February 25, 2009). Haddock acknowledges that this rule does not preclude a finding of waiver but argues that this rule, as incorporated into the agreement, is further indication of the parties' intent to favor arbitration, specifically with regard to waiver.

The presence of such a "no waiver" clause in an arbitration agreement does not alter the ordinary analysis undertaken to determine if a party has

31

waived its right to arbitration by litigation conduct. *PAICO,* 383 F.3d at 348.

The Fifth Circuit in that case agreed with those courts that have interpreted

such a "no waiver" clause as intended to permit parties to seek provisional

remedies or other judicial proceedings that would not function to displace

arbitration on the underlying dispute. *Id*. Specifically, the court in *PAICO*

stated, "'[T]he fact that an arbitration agreement incorporates such a provision

would not prevent a court from finding that a party waived arbitration by

protracted litigation of an arbitrable dispute.'" *Id.* (quoting *S & R Co. v. Latona*

*Trucking, Inc.*, 159 F.3d 80, 85 (2nd Cir. 1998), *cert. dism'd*, 528 U.S. 1058

(1999)); *see also Home Gas Corp. v. Walter's of Hadley, Inc.*, 403 Mass. 772,

532 N.E.2d 681, 684–85 (1989) (holding "no waiver" clause did not prevent

finding of waiver by litigation conduct); *Seidman & Seidman v. Wolfson,* 50

Cal. App. 3d 826, 835, 123 Cal. Rptr. 873 (Cal. Ct. App. 1975) (stating

purpose behind "no waiver" rule is not to allow a party to seek judicial relief

of a controversy "and later to switch course and demand arbitration").

We hold that the trial court properly determined that it, rather than an

arbitrator, should decide whether Haddock waived the arbitration agreement by

filing and prosecuting the prior lawsuit. We overrule Haddock's first issue.[8]

---

[8] We also overrule the second part of Haddock's second issue, in which
he argues that whether the arbitration agreement forbids his Sarbanes-Oxley

32

**D.    Waiver by Prior Litigation Conduct Inconsistent with Arbitration**

Having dealt with the preliminary arguments that consumed the vast bulk of the briefing by both sides, we now address the main issue.   Haddock contends that the trial court abused its discretion and misapplied the law to the facts by concluding that he waived arbitration by his conduct in initiating and prosecuting the prior lawsuit.  Haddock maintains that his prior lawsuit did not assert the same issues raised by his demand for arbitration and that the issue in the prior lawsuit did not "aris[e] out of or in connection with th[e] [Partnership] Agreement or the Partnership" but, instead, arose from an entirely separate contract—the severance agreement—which was not subject to arbitration.

Real Parties in Interest do not contest the validity of the arbitration agreement in the limited partnership agreement.   Their position is that the severance agreement is subject to the arbitration agreement contained in the

---

derivative claim is for the arbitrator to decide, not the court, similar to a like issue regarding class arbitration under *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 449, 123 S. Ct. 2402, 2405 (2003) (holding question of whether an arbitration agreement forbade class arbitration was for the arbitrator, not the court, because it involved contract interpretation and arbitration procedures). The trial court did not determine that the derivative claim was forbidden by the arbitration agreement; rather, it determined that the claim was outside the scope of the arbitration agreement because most CEI stockholders were not parties to the partnership agreement. Haddock has not challenged that ruling or the findings of the court to that effect.

33

limited partnership agreement that Haddock raised and litigated in the prior litigation, that his conduct in the prior litigation was inconsistent with an intent to arbitrate that claim, and that they suffered prejudice; thus, they argue, Haddock waived his right to arbitrate his current claims.

Whether a party has waived its arbitration rights under the FAA by inconsistent litigation conduct is a question of law that we review de novo. *Perry Homes*, 258 S.W.3d at 598 & n.102; *see also In re Citigroup Global Mkts, Inc.*, 258 S.W.3d 623, 625 (Tex. 2008) (orig. proceeding) (per curiam); *In re Serv. Corp. Int'l*, 85 S.W.3d 171, 174 (Tex. 2002) (orig. proceeding) (per curiam). Because public policy favors arbitration, there is a strong presumption against waiver of arbitration. *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24–25, 103 S. Ct. at 941; *In re D. Wilson Constr. Co.*, 196 S.W.3d at 783.

The party asserting waiver bears a heavy burden of proof, and the court must resolve all doubts in favor of arbitration. *In re Bruce Terminix Co.,* 988 S.W.2d 702, 704 (Tex. 1998). Waiver must be intentional. *In re Bank One, N.A.*, 216 S.W.3d at 827. Waiver may be express or implied from a party's conduct, but that conduct must be unequivocal. *Id.* Additionally, waiver in the context of arbitration agreements subject to the FAA requires more than is required for general waiver—it requires proof that the party asserting waiver as

34

a defense to arbitration has suffered prejudice. *Perry Homes*, 258 S.W.3d at 594–95 & n.80 (reaffirming requirement of prejudice and collecting cases).

Under the FAA, "[a] party waives an arbitration clause by substantially invoking the judicial process to the other party's detriment." *In re Citigroup Global Mkts., Inc.*, 258 S.W.3d at 625 (quoting *Perry Homes*, 258 S.W.3d at 594).

To demonstrate waiver, the party opposing arbitration must establish both that (1) the party seeking arbitration substantially invoked the judicial process and (2) the party opposing arbitration suffered prejudice thereby. *In re Bruce Terminix*, 988 S.W.2d at 704. To invoke the judicial process, a party "must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *PAICO*, 383 F.3d at 344 (quoting *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999)).

### 1. The prior suit substantially invoked the judicial process

Haddock contends that waiver could not have occurred because the prior suit concerned only the unfavorable-comments clause in the severance agreement, which had no arbitration agreement, and that his current arbitration demand asserts entirely different claims that arise only out of a separate contract, i.e., the partnership agreement. Therefore, we first determine

35

whether—as Real Parties in Interest contend—the prior suit invoked the judicial process regarding the same claims that Haddock now seeks to arbitrate. *See id.* at 344–47 (holding waiver applies only where the same claim sought to be arbitrated was previously litigated but upholding finding of waiver where jurisdiction of court was previously invoked on all issues). We agree with Real Parties in Interest on this key issue.

Although the severance agreement contains no arbitration clause, the CREELP unit option plan—as amended and attached to the severance agreement—does. Both the prior suit and the arbitration demand concern claims that "aris[e] out of or in connection with" the limited partnership or the limited partnership agreement by virtue of the CREELP unit option plan, which is subject to all terms of the limited partnership agreement. Section 6.26 of the 1996 CREELP Unit Option Incentive Plan, attached as an appendix to Haddock's severance agreement, expressly provides that "the rights granted thereunder are governed by and subject to each of the terms and conditions of the partnership agreement." That option plan further provides that upon exercising an option thereunder, each participant is "deemed to have accepted and agreed to be bound by each of the terms and conditions of the Partnership Agreement *for all purposes*." [Emphasis added.] As amended in 1994 and thereafter, the partnership agreement, in turn, contains the arbitration agreement under which

36

Haddock seeks to arbitrate his CREELP unit option and his CEI stock option claims.[9]

While Haddock claims that he initially sought only to reform the unfavorable-comments clause of the severance agreement in the prior lawsuit, he had a stated purpose for doing so — so that he could plead and litigate his claims of risky loans and mismanagement of the Crescent Entities, which allegedly resulted in devaluing his CREELP and CEI options, without fear of violating that clause. Moreover, he also sought and obtained affirmative injunctive relief against the Crescent Entities, preventing them from threatening or taking action to forfeit his rights in the CREELP unit options vested in him by the severance agreement. Haddock expressly stated his intent to file an additional suit to assert his claims against the Crescent Entities or, alternatively, to assert those claims in that same suit, and he sought the protection of the

---

[9] The trial court found, and Haddock has not challenged that finding, that he raised some of the same issues in the prior suit that he now seeks to arbitrate, alleging in his petition in that suit that the Crescent Entities "may be acting adversely to the interests of stockholders and unitholders" and that "Haddock further believes the management of the Employer Group is not acting in the best interests of the shareholders and unitholders by providing risky loans to executives which seriously jeopardize the financial health and stability of the Employer Group."

court through a ruling that he would not risk interference or forfeiture of his options by proceeding with his proposed litigation.

Only after ultimately suffering an adverse result in his suit did Haddock turn to arbitration. Haddock alleged in his arbitration demand that the option claims he now asserts in that demand are "covered by the arbitration provision in the Limited Partnership Agreement."[10] The fact is that both his prior suit and his arbitration demand assert the same conduct of Real Parties in Interest, namely, allegedly refusing to honor and reducing in value his CREELP unit options and CEI stock options.

Haddock cannot have it both ways. If, as he says, his claims regarding option rights asserted in his arbitration demand are covered by the arbitration agreement, then so were the claims regarding the option rights that he sought to protect in the previous lawsuit and planned to litigate once he obtained a declaration that the unfavorable-comments clause of his severance agreement did not preclude such a suit. By his prior lawsuit, Haddock invoked the judicial process with respect to the same claims specifically regarding his options in CREELP that he now seeks to arbitrate.

---

[10] Although Haddock points out that he had and retains to this day a limited partnership interest in CREELP, he has never explained how the arbitration demand involves that limited partnership interest, other than through the identical options that were involved in the prior suit.

Was his invocation of the judicial process in the prior litigation "substantial"? Waiver by litigation conduct must be decided under a totality-of-the-circumstances test on a case-by-case basis. *Perry Homes*, 258 S.W.3d at 591. Factors listed in that case in considering the totality of the circumstances include whether the party seeking arbitration chose to file in court as plaintiff, how long the party seeking arbitration delayed before seeking that process, whether that party knew of the arbitration clause from the outset, how much discovery was conducted, how much pretrial activity went to the merits, how much time and expense was incurred in litigation, whether the party seeking arbitration filed dispositive motions or sought judgment on the merits, and when the case was to be tried. *Id.* at 591–92.

Real Parties in Interest assert that Haddock "substantially" invoked the judicial process with respect to his claim regarding his rights in the CREELP unit options because

> (1) Haddock chose to file the prior lawsuit in court rather than arbitrate ("whether the movant was the plaintiff (who chose to file in court) or the defendant (who merely responded)");
>
> (2) Haddock filed the prior lawsuit in March 2005, pursued it through final judgment, appealed it to this court, and waited until July of 2006 to file his demand for arbitration ("how long the movant delayed before seeking arbitration");
>
> (3) Haddock was "the primary signatory on the First Amended Limited Partnership Agreement" and "intended for the arbitration

39

agreement to be broad and encompass all claims and disputes ("whether the movant knew of the arbitration clause all along");

(4) Haddock knew of the arbitration agreement in 1994 when he signed the First Amended Limited Partnership Agreement ("when the movant knew of the arbitration clause");

(5) Haddock was the plaintiff in the prior lawsuit and filed two motions for summary judgment ("whether the movant filed affirmative claims and dispositive motions"); and

(6) Haddock pursued the prior lawsuit to a final judgment ("whether the movant sought judgment on the merits").

Haddock does not dispute these facts. Haddock chose to file his prior suit rather than to arbitrate, sought and obtained affirmative relief, and expressed his intent to pursue his claims in that lawsuit or in another suit as to mismanagement and refusal of the Crescent Entities to allow him to exercise his options. Throughout the prior litigation, Haddock never mentioned the arbitration agreement under which he now seeks to arbitrate his option claims. Yet he was clearly aware of it because he admits in his brief in this court that he desired that it be included in the limited partnership agreement in 1994.

Further, waiver may be found where a party has tried and failed to achieve a satisfactory result before turning to arbitration. *See, e.g., Oak Partners*, 248 S.W.3d at 848; *Loudermilk*, 208 S.W.3d at 704; *Williams Indus., Inc. v. Earth Dev. Sys. Corp.*, 110 S.W.3d 131, 135 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *In re Winter Park Constr. Inc.*, 30 S.W.3d 576, 579 (Tex.

40

App.—Texarkana 2000, orig. proceeding); compare *In re Bruce Terminix Co.*, 988 S.W.2d at 704 (finding no waiver where defendant did not ask court for any judicial decision such as by requesting summary judgment).

Indeed, failing to seek arbitration until after proceeding in litigation to an adverse result is the clearest form of inconsistent litigation conduct and is inevitably found to constitute substantial invocation of the litigation process resulting in waiver. *See, e.g., Jones v. Citibank (S.D.), N.A.,* 235 S.W.3d 333, 340–41 (Tex. App.—Fort Worth 2007, no pet.) (holding defendant waived arbitration of counterclaim by litigating over two years and after summary judgment was rendered against her); *see also Frye v. Paine, Weber, Jackson & Curtis, Inc.,* 877 F.2d 396, 398 (5th Cir. 1989) (holding party waived arbitration by participating in litigation that ended in mistrial), *cert. denied*, 494 U.S. 1016 (1990); *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497–98 (5th Cir. 1986) (finding waiver by filing state court lawsuit and permitting it to be dismissed for want of prosecution); *see also Carbajal v. Household Bank F.S.D.,* No. 00 C 0626, 2003 WL 22159473, at *10 (N.D. Ill. Sept. 18, 2003) (noting "[p]articipation in litigation raises concerns of forum-shopping. If a party first demands arbitration only after it receives an adverse ruling in the lawsuit, courts inevitably will find waiver" and collecting cases), *aff'd*, 372 F.3d 903 (7th Cir. 2004); *Oak Partners*, 248 S.W.3d at 849 (holding

41

trial court's waiver finding based on totality of circumstances including engaging in extensive discovery over nineteen-month period, filing of counterclaim, cross-claims, and motion for partial summary judgment, and seeking arbitration only after failure of mediation).

Haddock filed his arbitration demand after filing suit, obtaining injunctive relief, litigating for some nine months, filing two motions for summary judgment, and finally suffering an adverse result in the prior lawsuit. All of these facts support the trial court's finding that he substantially invoked the litigation process and thereby waived his right to arbitration.

Moreover, participation in litigation to gain an advantage in future litigation can result in waiver. *See In re Christus Spohn Health Sys. Corp*., 231 S.W.3d 475, 481 (Tex. App.—Corpus Christi 2007, orig. proceeding) (holding hospital's prior litigation conduct in criminal case constituted waiver of right to arbitrate where prior litigation involved developing evidence as part of strategic plan for defense of civil suit for damages). Haddock made clear in his pleadings in his prior suit that his strategy and plan was to obtain an interpretation of the severance agreement that would permit him to assert his claims in a lawsuit without violating the unfavorable-comments clause while preventing Real Parties in Interest from taking any action to interfere with the option rights he sought to protect by injunctive relief and which he now seeks to arbitrate.

42

Haddock filed his arbitration demand for his option claims over a year and a half after filing suit, prosecuting that suit, suffering an adverse summary judgment in the trial court, and after dismissing his appeal to this court. Considering the totality of the circumstances as articulated in *Perry Homes*, we hold that Haddock substantially invoked the judicial process.

### 2. Prejudice

Substantially invoking the judicial process does not waive a party's arbitration rights unless the opposing party also proves that it suffered prejudice as a result. *Perry Homes*, 258 S.W.3d at 593–94 (citing *In re Bruce Terminix Co.*, 988 S.W.2d at 704). "Courts will not find that a party has waived its right to enforce an arbitration clause by merely taking part in litigation unless it has substantially invoked the judicial process to its opponent's detriment." *In re Service Corp. Int'l*, 85 S.W.3d at 174. "When one party reveals a disinclination to resort to arbitration on any phase of suit involving all parties, those parties are prejudiced by being forced to bear the expense of a trial. . . . Substantially invoking the litigation machinery qualifies as the kind of prejudice that is the essence of waiver." *E.C. Ernst, Inc. v. Manhattan Constr. Co.,* 559 F.2d 268, 269 (5th Cir. 1977) (holding extensive postsuit actions in all phases of complex litigation served as waiver of right to arbitrate when opposing parties were

43

prejudiced by being forced to bear expenses of a quite lengthy trial, which is the kind of prejudice arbitration is designed to avoid).

"Prejudice" has many meanings. *Perry Homes*, 258 S.W.3d at 597. However, prejudice or "detriment" in the context of litigation conduct inconsistent with arbitration relates to "inherent unfairness" caused by "a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage." *Id.; see also Subway,* 169 F.3d at 327 (referring to "inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue"). "[A] party should not be allowed purposefully and unjustifiably to manipulate the exercise of its arbitral rights simply to gain an unfair tactical advantage over the opposing party." *Id.* (citing *In re Tyco Int'l Ltd. Securities Litigation*, 422 F.3d 41, 46 n.5 (1st Cir. 2005)).

Ultimately, what constitutes waiver of the right to arbitrate depends on the facts of each case. *PAICO*, 383 F.3d at 346 (citing *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420 (5th Cir 1985)). Three factors are particularly relevant in determining prejudice. *Id*. First, pretrial activity related to all claims including those that are arbitrable may result in prejudice. *Id*. (citing *Price v. Drexel Burnham Lambert, Inc*. 791 F.2d 1156, 1161–62 (5th

44

Cir. 1986)). Second, time and expense incurred in defending against a motion for summary judgment could prejudice the party opposing arbitration. *Price*, 791 F.2d at 1162. Thus, both delay and the extent of the moving party's participation in judicial proceedings are material factors in assessing prejudice. *Frye*, 877 F.2d at 398. Third, failure to assert the right to demand arbitration is a factor bearing on the question of prejudice along with other considerations. *Price,* 791 F.2d at 1161–62. A demand for arbitration puts the other party on notice that arbitration is forthcoming and affords that party the opportunity to avoid compromising its position with regard to arbitrable and nonarbitrable claims. *PAICO,* 383 F.3d at 347.

If a party has asserted the right to arbitrate at or before commencement of litigation, the party opposing arbitration will necessarily carry a heavy burden to show waiver. *Id.* Conversely, when a party fails to demand arbitration and also engages in pretrial activity inconsistent with the intent to arbitrate, the opposing party seeking to show waiver "may more easily show that its position has been compromised, i.e., prejudiced." *Id*.; *see Oak Partners,* 248 S.W.3d at 851 (concluding that plaintiff showed prejudice when defendant delayed nineteen months before moving to compel arbitration, during which time it actively pursued litigation in the trial court, sought discovery from plaintiff, and actively sought relief from the trial court, which forced plaintiff to respond and

45

to incur attorney's fees); *Jones,* 235 S.W.3d at 340–41 (holding appellant waived her right to arbitrate when she waited for over two years after card issuer's first petition was filed before requesting arbitration, and by that time had filed numerous motions including a motion to dismiss, a counterclaim, and opposition to summary judgment); *see also Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 253 (4th Cir. 1987) (finding sufficient prejudice to support waiver where brokerage firm delayed four-and-one-half years before seeking arbitration, two trial dates passed, and opposing party was required to respond to two motions for partial summary judgment and three motions to dismiss)*; Miller Brewing*, 781 F.2d at 497–98 (finding waiver where plaintiff unconditionally filed suit, waited eight months to assert right to arbitrate, and did not pursue arbitration until after its suit was dismissed three years later for want of prosecution).  Likewise, in *Price*, the Fifth Circuit Court of Appeals held that prejudice resulted in waiver when the party opposing arbitration had been put to the expense and time of defending a motion to dismiss and for summary judgment because unlike a perfunctory motion to dismiss before answering, a federal rule 12(b) motion to dismiss and for summary judgment "could not have caused anything but substantial prejudice to the Prices."  791 F.2d at 1162.

Haddock failed to seek arbitration before initiating the prior litigation. Then he waited over fourteen months before requesting arbitration, from March 2005, when he filed the prior lawsuit, until July 2006, when he filed his statement of claims with the AAA. During that time, among other things, he obtained a temporary injunction, filed two motions for summary judgment, litigated his claims to an adverse judgment, and filed and dismissed an appeal from that judgment. The trial court specifically found that the "Crescent Entities were prejudiced by Haddock's invocation of the judicial system in the Prior Lawsuit. In reliance on Haddock's actions, the Crescent Entities spent substantial sums defending Haddock's claims in the Prior Lawsuit and prosecuting a counterclaim." Haddock has not challenged that finding.

We hold that the trial court did not abuse its discretion by staying the arbitration because Haddock made his choice: he substantially invoked the judicial process as to his option claims to the prejudice of Real Parties in Interest in the prior litigation and thereby waived his right to arbitrate those claims. We overrule Haddock's third issue.

## IV. Conclusion

Haddock does not challenge the trial court's ruling that his claims based on his stock options in CEI or his Sarbanes-Oxley claim are beyond the scope of the arbitration agreement. Nor has he raised an issue on appeal as to the trial

47

court's ruling that his claims against Quinn, Rowsey, and Worrell are beyond the scope of the arbitration agreement. Therefore, we need not reach the propriety of the trial court's order as to those claims. Having overruled Haddock's three issues, we deny the petition for writ of mandamus, and we dismiss the interlocutory appeal for want of jurisdiction.

ANNE GARDNER
JUSTICE

PANEL: GARDNER and WALKER, JJ.; and DIXON W. HOLMAN, J. (Senior Justice, Retired, Sitting by Assignment).

WALKER, J. concurs without opinion.

DELIVERED: February 26, 2009

48