

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

## No. 02-21-00227-CV

_____

LON SMITH & ASSOCIATES, INC., AND A-1 SYSTEMS, INC. D/B/A LON
SMITH ROOFING AND CONSTRUCTION, Appellants

V.

JOE KEY AND STACCI KEY, Appellees

On Appeal from the 236th District Court
Tarrant County, Texas
Trial Court No. 236-267881-13

Before Bassel, Wallach, and Walker, JJ.
Opinion by Justice Wallach

## OPINION

This is an interlocutory appeal from an order denying Appellants' Lon Smith & Associates, Inc., and A-1 Systems, Inc. d/b/a Lon Smith Roofing and Construction ("Smith") Motion to Amend Class Definition or Motion to Compel Arbitration. We will dismiss the appeal of their Motion to Amend Class Definition for lack of jurisdiction. We will affirm the trial court's order denying their Motion to Compel Arbitration.

## I.    Background

### A.    *Smith 1*

This is part two of this court's saga with this litigation. Part one (*Smith 1*), can be read at *Lon Smith & Assocs., Inc. v. Key*, 527 S.W.3d 604 (Tex. App.—Fort Worth 2017, pet. denied). The facts giving rise to this dispute were summarized in *Smith 1*:

> A May 2011 hailstorm damaged the roof of the Keys' residence. The Keys notified their homeowners' insurance carrier of the damage, and Joe signed a contract with A-1 for the installation of a new roof with a total price of $33,769.50. Stacci did not sign the contract; the Keys allege that Joe signed it on her behalf. The "Acceptance and Agreement" provision of the contract provided that
>
>> [t]his Agreement is for FULL SCOPE OF INSURANCE ESTIMATE AND UPGRADES and is subject to insurance company approval. By signing this agreement homeowner authorizes Lon Smith Roofing and Construction ("LSRC") to pursue homeowners['] best interest for all repairs, at a price agreeable to the insurance company and LSRC. The final price agreed to between the insurance company and LSRC shall be the final contract price.

A-1 installed the new roof. The Keys paid their homeowners' insurance proceeds of $18,926.69 to A-1, leaving a balance on the $33,769.50 amount. To collect the amount A-1 claimed that the Keys owed, A-1 filed suit against Joe in a justice court and obtained a default judgment. Joe subsequently challenged the default judgment and obtained a June 23, 2015 judgment setting it aside as void. A-1 appealed the June 23, 2015 judgment to the county court at law. See Tex. R. Civ. P. 506.1.

Meanwhile, in September 2013, the Keys sued LSRC, asserting that the Acceptance and Agreement provision in the contract with A-1, which did business collectively with Associates, violated Texas Insurance Code section 4102.051's prohibition against a corporation acting or holding itself out as a public insurance adjuster in the absence of a license. *See* Tex. Ins. Code Ann. § 4102.051(a) (West Supp. 2016). Accordingly, the Keys claimed the agreement was illegal, void, and unenforceable. *See id.* § 4102.207(a), (b) (West 2009) (setting forth remedies for violation of chapter 4102).

Based on the alleged illegality of LSRC's agreement under section 4102.051, the Keys pleaded a claim for declaratory relief—to declare the agreement with LSRC illegal, void, and unenforceable and to declare, consequently, that they and other class members are "entitled to a judgment restoring all monies paid to [LSRC] under the illegal contract" pursuant to the statutory remedy provided by section 4102.207(b). *See* Tex. Ins. Code Ann. §§ 4102.051, .207(b); Tex. Civ. Prac. & Rem. Code Ann. §§ 37.002, .011 (West 2015). The Keys also pleaded causes of action for damages based on DTPA violations, fraud, violations of the Texas Debt Collection Practices Act, and fraudulent use of court records.

In due course, the Keys obtained class certification of their declaratory-judgment claim and their DTPA claims under sections 17.50(a)(3) (Unconscionability) and 17.50(a)(4) (Violation of Chapter 541 of the Texas Insurance Code).[1]

---

[1] In *Smith 1*, we referred to Lon Smith & Associates, Inc. as "Associates," to A-1 Systems, Inc., d/b/a Lon Smith Roofing and Construction as "A-1" and Associates and A-1 collectively as "LSRC." For purposes of this appeal, we refer to them collectively as "Smith" unless otherwise noted.

*Id.* at 610–11.

The trial court's certification order that led to *Smith 1* certified the Keys to represent a class defined as follows:

> All Texas residents who from June 11, 2003 through the present signed agreements with [LSRC] that included the following provision, or language substantially similar to the following provision: "This Agreement is for FULL SCOPE OF INSURANCE ESTIMATE AND UPGRADES and is subject to insurance company approval. By signing this agreement homeowner authorizes Lon Smith Roofing and Construction ("LSRC") to pursue homeowners['] best interest for all repairs at a price agreeable to the insurance company and LSRC. The final price agreed to between the insurance company and LSRC shall be the final contract price."

*Id.* at 614–15.

The order certified three claims for class treatment: (a) the Keys' declaratory judgment claim, (b) the Keys' DTPA claim based on Section 17.50(a)(3) (Unconscionability), and (c) the Keys' DTPA claim based on Section 17.50(a)(4) (Violation of Chapter 541 of the Texas Insurance Code). The class-certification order set forth the trial court's findings of fact and conclusions of law that the Keys had met their burden of establishing all four requirements of Civil Procedure Rule 42(a) and subdivisions (1)(A), (2), and (3) of Rule 42(b). *See* Tex. R. Civ. P. 42(a), (b)(1)(A), (2), (3). The order certified the class alternatively under each of these subsections of Rule 42(b); provided for notice and opt-out provisions for each of the classes certified alternatively under Rule 42(b)(3), 42(b)(2), and 42(b)(1)(A); appointed class counsel; and set forth a trial plan. *Smith 1*, 527 S.W.3d at 615.

4

LSRC and A-1 appealed the class certification on multiple grounds in *Smith 1*. We reversed that portion of the trial court's class certification order certifying a class under Section 17.50(a)(3) (unconscionability) under the DTPA and affirmed the remainder of the class certification. *Id.* at 640. The Supreme Court denied petition for review, and the case went back to the trial court for further proceedings, which now brings us this appeal, *Smith 2*.

**B.    *Smith 2***

On January 30, 2020, the Keys filed their Motion to Shift Class Notice Costs to Smith, arguing this court had already determined the merits of this case in favor of the Keys and, therefore, Smith should be required to bear the costs associated with class notice. Smith opposed the motion as the trial court had already entered a trial plan which provided for the Keys or class counsel to bear the cost of notice, noting that appointed class counsel had agreed to devote the resources to effect the notice.

On June 24, 2020, the trial court signed an Order Directing Defendants [Smith] to Pay Costs of Class Notice, ordering them "to pay all invoices reflecting costs and expenses incurred to provide of [sic] class notice." Smith filed their Motion to Amend Class Definition or Motion to Compel Arbitration, requesting the trial court to (1) amend the class definition, pursuant to Rule 42(c) of the Texas Rules of Civil Procedure, to exclude from the class those customers whose agreements with Smith included arbitration provisions, or (2) compel arbitration under the Federal Arbitration Act. Smith alleged that they had provided summary lists to opposing

5

counsel pursuant to Rule 1006 of the Texas Rules of Evidence of the 22,258 customers with arbitration provisions in their agreements from the 36,899 customer class files produced by Smith to the Keys. The arbitration language in those customers' agreements allegedly provided:

> All parties agree to settle any disputes regarding damages, quality of materials or workmanship through binding arbitration with the local Better Business Bureau before either party may officially file suit with any court. ARBITRATION SHALL BE BINDING.

On July 15, 2021, the trial court signed its Order Denying Smith's Motion to Amend Class Definition or Motion to Compel Arbitration, which also sustained the Keys' objections to the admissibility of the evidence filed in support of the Motions.

## II. Jurisdictional Challenge

Whether we have jurisdiction to hear an interlocutory appeal is a question of law. *Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007). The Keys contend that this court lacks jurisdiction of this appeal in two points. First, they contend that this court lacks jurisdiction over that portion of the trial court's order declining to amend the class definition. Second, the Keys contend that the remainder of the appeal is a disguised motion to decertify the class, which this Court also lacks jurisdiction to review. It is uncontroverted that this is an interlocutory appeal. Smith's Appellant's Brief contains no statement of jurisdiction regarding the order denying the motion to amend the class definition, only the denial of the motion to compel arbitration. The Keys raised the issue of jurisdiction in their Appellees' Brief. Smith's

6

Reply Brief does not attempt to justify interlocutory jurisdiction of this court over the trial court's denial of the Motion to Amend Class Certification, only over that portion of the trial court's denial of the Motion to Compel Arbitration.

We hold that we lack jurisdiction over the trial court's order denying the Motion to Amend Class Certification. This Court has jurisdiction over an interlocutory appeal only if a statute explicitly so provides. *Stary v. DeBord*, 967 S.W.2d 352, 352–53 (Tex. 1998). "Appellate jurisdiction is never presumed," and "[u]nless the record affirmatively shows the propriety of appellate jurisdiction," courts of appeals "must dismiss" appeals of interlocutory orders. *In re Est. of Brown*, 346 S.W.3d 780, 781 (Tex. App.—Dallas 2011, no pet.). No Texas statute authorizes jurisdiction over an interlocutory appeal of an order denying a motion to amend or modify a class definition. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 51.014, 51.016. Correspondingly, "[g]enerally, modifications of certification orders, such as those modifying the size of a class or a class definition, are not appealable." *Phillips Petroleum Co. v. Yarbrough*, 405 S.W.3d 70, 76 (Tex. 2013).[2] We, therefore, lack jurisdiction over those portions of the order declining to amend or modify the class definition, including modifying or amending it for arbitration related issues. *DeBord*, 967 S.W.2d at 354; *see also City of*

---

[2]An exception to this rule may apply when an order "alters the fundamental nature of the class" such that the propriety of class certification is called into question and the order may be properly characterized as one "certif[ying] or refus[ing] to certify a class." *See id.* 405 S.W.3d at 76–79; Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(3). This exception is not applicable to this case.

*Arlington v. Tex. Elec. Serv. Co.*, 540 S.W.2d 580, 582 (Tex. App.—Fort Worth 1976, writ ref'd n.r.e.) ("A[] [permissible] appeal from an interlocutory order . . . may not be used as a vehicle for carrying other non-appealable interlocutory orders and judgments to the appellate court.").[3] Thus, the Keys' challenge to this court's jurisdiction regarding the trial court's denial of the Motion to Amend Class Certification is sustained.

Is the remainder of this appeal a disguised motion to decertify the class over which this Court would arguably lack jurisdiction to review by interlocutory appeal? We hold that it is not. Smith sought relief from the trial court to compel arbitration with the Keys and with each member of the certified class with which it had an arbitration agreement. The court denied that motion in a signed, written order. Under both the Federal Arbitration Act and the Texas Arbitration Act, denial of a motion to compel arbitration is subject to interlocutory appeal. *Bonsmara Nat'l Beef Co., LLC v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 390 n.4 (2020); *Brand FX, LLC v. Rhine*, 458 S.W.3d 195, 201 (Tex. App.—Fort Worth 2015, no pet.). The trial court's

---

[3]The trial court's order also denied Smith's Motion to Modify Class Definition. That motion sought to remove from the class all class members whose claims might be barred by limitations. Smith's notice of appeal arguably includes an appeal from the order denying this Motion to Modify Class Definition. Smith, however, does not include any appellate argument regarding this Motion to Modify. It is, therefore, waived. *Kerr v. Bank of New York Mellon Trust Co., N.A., Trustee*, No. 02-20-00179-CV, 2021 WL 1421440, at *4 (Tex. App.—Fort Worth April 15, 2021, pet. denied) (mem. op.). However, even if we were to consider it raised, a denial of a motion to modify a class definition is not subject to interlocutory appeal under any statute or rule. *See Phillips Petroleum Co.*, 405 S.W.3d at 76.

8

order denying arbitration is properly subject to interlocutory appeal. Accordingly, we overrule this jurisdictional challenge to the trial court's order denying the motion to compel arbitration.

## III.  Analysis

### A.  Standards of Review

We review a trial court's order denying a motion to compel arbitration for abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo. *Id.* A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or acts without reference to any guiding rules or principles. *In re Copart*, 619 S.W.3d 710, 713 (Tex. 2021) (orig. proceeding); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). A trial court has no "discretion" in determining what the law is or in applying the law to the facts. *In re Allstate Ind. Co.*, 622 S.W.3d 870, 875–76 (Tex. 2021) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). When, as here, the trial court does not file findings of fact and conclusions of law, we will uphold the refusal to compel arbitration if any viable legal theory—that was raised by the parties—supports that decision. *Mid-America Apartments, L.P. v. Trojan*, No. 02-21-00204-CV, 2021 WL 5028794, at *2 (Tex. App.—Fort Worth Oct. 28, 2021, no pet.) (mem. op.); *APC Home Health Servs., Inc. v. Martinez*, 600 S.W.3d 381, 389 (Tex. App.—El Paso 2019, no pet.).

**B.     Analysis of Issue Presented**

Extracting the "issue presented" from the arguments in their "Issue Presented" section, Smith's sole complaint is that the trial court abused its discretion by denying their Motion to Amend Class Definition or Motion to Compel Arbitration. Having determined that we do not have jurisdiction over the Motion to Amend Class Definition, we will limit our consideration to the denial of arbitration.[4]

1.     Arbitration with the Keys

Although the Keys' contract with Smith was not authenticated by testimonial evidence, it was not necessary to do so. It was attached as Exhibit B to the Keys' Third Amended Petition and Motion for Class Certification, and the Keys acknowledged Joe Key's signature to it. Its authentication was, therefore, judicially admitted. *Gracepoint Holding Co., LLC v. FJR Sand, Inc.*, No. 01-19-00574-CV, 2020 WL 61594, at *4 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (mem. op.). By signing an arbitration agreement, a party manifests its intent to be bound by it. *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (orig. proceeding); *Truly Nolen of Am., Inc. v. Martinez*, 597 S.W.3d 15, 21 (Tex. App.—El Paso 2020, pet. denied). By signing a

---

[4]Smith raises several arguments, with subparts, in its Brief, some of which are anticipatory of the Keys' arguments, e.g., arbitration under the Federal Arbitration Act under a valid and enforceable arbitration agreement, no waiver by Smith of right to arbitrate with the Keys' or class members, and law of the case doctrine. In reaching our decision, we have addressed many of those arguments as pertinent to our decision. Otherwise, we need not address them based on the disposition we reach. Similarly, the Keys raised a number of arguments which, based on our disposition of the case, we need not address.

contract, a party is presumed to have read and understood its contents. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 134 (Tex. 2004) (orig. proceeding); *UBS Fin. Servs. Inc. v. Branton*, 241 S.W.3d 179, 189 (Tex. App.—Fort Worth 2007, no pet.) (UBS met its burden of establishing a valid arbitration agreement existed when it proved that Branton signed two documents incorporating the arbitration agreement from a master agreement).

The Keys contend that the arbitration agreement is not enforceable because the contract was illegal, void, and unenforceable as contrary to public policy. Regarding the defenses of illegality and voidness, the Keys contend that we held in *Smith 1* that the Keys' contract is illegal and void, thereby rendering the arbitration agreement unenforceable. Smith disagrees, arguing that we only held that the Keys and class members had a viable claim. It is not necessary for us to resolve that disagreement. Voidness and illegality of a contract as a whole is not a defense to a motion to compel arbitration. That is a matter to be resolved by the arbitrator, not by the court denying a request to arbitrate. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 647–49 (Tex. 2009) (orig. proceeding) (whether a contractual agreement containing an arbitration clause violated the Labor Code was a challenge to the entire agreement for invalidity, which was for arbitrator to decide); *Friedman & Feiger, LLP v. Massey*, Nos. 02-18-00401-CV, 02-18-00402-CV, 2019 WL 3269325, at *4 (Tex. App.—Fort Worth July 18, 2019, pet. denied) (mem. op., on reh'g) (contention that contingency fee agreement containing arbitration provision was void because it violated provision of the Estates Code was

11

challenge to the contract as a whole, which was for arbitrator to decide). The same is true for the other asserted defenses. *Perry Homes v. Cull*, 258 S.W.3d 580, 589 (Tex. 2008) ("[A]rbitrators generally must decide defenses that apply to the whole contract, while courts decide defenses relating solely to the arbitration clause."); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001) (orig. proceeding) (defense of unconscionability which goes to the contract as a whole, not specifically to the arbitration clause, is for the arbitrator to decide). Thus, if Smith is entitled to arbitration with the Keys, it will be up to the arbitrator to decide the merits of these contractual defenses. If not, it will be up to the trial court to resolve them through a decision on the merits of the case.

Having determined that Smith established the existence of an arbitration agreement, we now address whether the Keys' claims fall within the scope of the arbitration clause. This is a question of law that we review de novo. *Henry*, 551 S.W.3d at 115. The Texas Supreme Court has summarized the test for determining this issue,

> Both Texas policy and federal policy favor arbitration. *In re FirstMerit Bank*, 52 S.W.3d at 753. Thus, courts "resolve any doubts about an arbitration agreement's scope in favor of arbitration." *Id.* Further, in deciding questions like those before us, courts focus on the factual allegations and not on the legal causes of action asserted. *Id.* at 754. The presumption in favor of arbitration "is so compelling that a court should not deny arbitration 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990)). Further, the scope of an arbitration clause that includes all "disputes," and not just claims, is very broad and encompasses more than claims "based solely on rights originating

12

exclusively from the contract." *See Pinto Tech. Ventures, L.P. v. Sheldon,* 526 S.W.3d 428, 439 (Tex. 2017) (examining a forum-selection clause and noting the analogies between such clauses and arbitration agreements).

*Id.* at 115–16.

The arbitration paragraph of the Keys' contract provides:

13. All Parties agree to settle any disputes regarding damages, quality of materials or workmanship through binding arbitration with the local Better Business Bureau before either party may officially file suit with any court. ARBITRATION SHALL BE BINDING.

This type of broad language regarding settling "any disputes" regarding "damages" clearly encompasses the Keys' allegations brought in this case. *See id.*; *Athas Health, LLC v. Trevithick,* No. 05-16-00219-CV, 2017 WL 655926, at *4 (Tex. App.—Dallas Feb. 17, 2017, no pet.) (mem. op.) ("When the contract contains a broadly written arbitration clause, so long as the allegations touch matters, have a significant relationship with, or are inextricably enmeshed or factually intertwined with the contract, the claim will be arbitrable.").

Having determined that the Keys' allegations are within the scope of the arbitration agreement, we now address the final issue, whether Smith expressly or impliedly waived their right to compel arbitration with the Keys. As noted by our Supreme Court,

In essence, the question of whether a party has waived its right to arbitration by its conduct in litigation is just another way of asking the first question of arbitrability: whether there is a presently enforceable arbitration agreement. If a party's conduct in litigation equates to a

waiver of its rights under the arbitration agreement, there is no presently enforceable agreement to arbitrate.

*G. T. Leach Builders, LLC v. Sapphire V.P., L.P.*, 458 S.W.3d 502, 520 (Tex. 2015).

Waiver of arbitration by conduct is a question to be decided by the court, not the arbitrator. *Perry Homes*, 258 S.W.3d at 587. We review this question of waiver de novo. *Henry*, 551 S.W.3d at 115. Waiver, an intentional relinquishment of a known right, can occur either expressly through a clear repudiation of the right or impliedly through conduct inconsistent with a claim to the right to arbitration. *Perry Homes*, 258 S.W.3d at 590–91, 594; *Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 6 (Tex. 2014).

A party makes an express waiver when it "affirmatively indicates that it wishes to resolve the case in the judicial forum, rather than through arbitration." *Okorafor v. Uncle Sam & Assocs.*, 295 S.W.3d 27, 39 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see also Garcia v. Huerta*, 340 S.W.3d 864, 869 (Tex. App.—San Antonio 2011, pet. denied) (court found express waiver where party affirmatively stated in settlement agreement that it was waiving its right to enforce an arbitration agreement).

Here, the Keys point to two statements made by Smith as constituting express waiver of the right to arbitrate the Keys' individual claims. First, in the Smith's Response to the Keys' Motion for Class Certification, Smith was explaining to the court why they considered the Keys' claims to be atypical of the claims of the purported class. Smith stated,

14

The parties have not enforced the arbitration clause in the Contract, and both sides have sought affirmative relief from this Court. **Thus, [the Keys'] claims, which are no longer subject to compelled arbitration**, are atypical of the claims of class members who have entered into binding arbitration agreements. [Emphasis added.]

Further, at the hearing on the Keys' Motion for Class Certification, Smith's counsel stated:

**The reason that we didn't enforce the arbitration clause against Mr. Key is irrelevant. We didn't.** We're here now, but that doesn't mean we can't as a result -- as against these other purported class members. Okay. We can. [emphasis added.]

These statements to the trial court, in context, clearly represented that Smith had affirmatively decided to resolve this case in the judicial forum rather than through arbitration. Smith (A-1) initiated the legal process with Joe Key in 2012 when it sued him in justice court to collect what it claimed to be the amount owed to it for services performed under the contract in question. Smith (A-1) obtained a default judgment against Joe Key, who then filed a bill of review that resulted in the justice court declaring the default judgment void and the contract in question illegal, void, and unenforceable. Smith (A-1) appealed the justice court judgment to the County Court at Law, which case has been stayed. Thus, Smith (A-1) is still seeking judicial relief against Key.

After the Keys filed this action on September 4, 2013, Smith did not seek to enforce their arbitration agreement with the Keys. Almost two years later, and still no motion to compel arbitration having been filed by Smith, the hearing on the Keys'

Motion for Class Certification occurred on May 26, 2015. Based on the statements above, it is readily apparent that Smith had affirmatively decided not to pursue arbitration with the Keys on the Keys' individual claims, which decision was announced to the court.[5]

We hold that Smith expressly waived their right to arbitrate with the Keys on the Keys' individual claims. Such being the case, the trial court did not abuse its discretion in denying Smith's Motion to Compel Arbitration as to the Keys' individual claims.

To the extent that Smith did not expressly waive their right to arbitrate the Keys' claims, we hold that Smith's litigation conduct constituted an implied waiver of their right to arbitrate the Keys' individual claims. To establish an implied waiver through substantial invocation of the judicial process, the Keys had the burden to prove that (1) Smith substantially invoked the judicial process in a manner inconsistent with their claimed right to compel arbitration, and (2) the Keys suffered actual prejudice because of the inconsistent conduct. *Henry*, 551 S.W.3d at 116; *G.T. Leach Builders*, 458 S.W.3d at 511–12; *Perry Homes*, 258 S.W.3d at 589–90. Implied waiver of arbitration by litigation conduct must be decided on a case-by-case basis, and courts should look to the totality of the circumstances in deciding this issue. *Perry Homes*, 258 S.W.3d at 591. The burden of proof is on the party asserting waiver, and

---

[5]Notably, in this appeal, Smith did not attempt to explain in its briefing why these statements do not amount to a clear expression of an express waiver.

16

the "hurdle" imposed by this burden is a "high one." *G.T. Leach Builders*, 458 S.W.3d at 511–12.

Courts have applied various factors in deciding this issue:

- whether the party who pursued arbitration was the plaintiff or the defendant;

- how long the party who pursued arbitration delayed before seeking arbitration;

- when the party who pursued arbitration learned of the arbitration clause's existence;

- how much the pretrial activity related to the merits rather than arbitrability or jurisdiction;

- how much time and expense has been incurred in litigation;

- whether the party who pursued arbitration sought or opposed arbitration earlier in the case;

- whether the party who pursued arbitration filed affirmative claims or dispositive motions;

- how much discovery has been conducted and who initiated the discovery;

- whether the discovery sought would be useful in arbitration;

- what discovery would be unavailable in arbitration;

- whether activity in court would be duplicated in arbitration;

- when the case was to be tried; and

- whether the party who pursued arbitration sought judgment on the merits.[6]

_____

[6]Based on the record before us, as well as the briefs of the parties, while some discovery did occur in the case outside of the class certification realm, the vast

*Hogg v. Lynch, Chappell & Alsup, P.C.*, 480 S.W.3d 767, 782–83 (Tex. App.—El Paso 2015, no pet.); *see also G.T. Leach Builders*, 458 S.W.3d at 512 (courts consider a "wide variety" of factors in determining whether a party has substantially invoked the judicial process). As the Supreme Court pointed out in *Perry Homes*, all of these factors are rarely presented in a single case, and waiver has been established based on only a few or even a single one. *Perry Homes*, 258 S.W.3d at 591.

We believe that Smith's litigation conduct relative to the Keys' individual claims clearly demonstrates an implied waiver of arbitration rights. Obviously, Smith "knew" about the arbitration provision in the contract since the contract was on their form contract. Despite their own contract providing the right to arbitrate claims for damages, Smith (A-1) chose to invoke the judicial process first by suing Joe Key in the justice court for breach of contract damages for non-payment. Smith (A-1) did not invoke the arbitration clause in the justice court. Rather, it pursued a default judgment and an appeal of the justice court's judgment setting aside the default judgment and declaring the contract void and unenforceable. Invoking the judicial process in the first case, which involved the same transaction and contract, as well as the same defense to the contract—illegality, and pursuing it to judgment until it was set aside,

---

majority of the discovery conducted was related to class certification. The other discovery factors identified in this list have little bearing on the issue of implied waiver in this case.

and then appealing, weighs in favor of waiver of arbitration. *Haddock v. Quinn*, 287 S.W.3d 158, 178–79 (Tex. App.—Fort Worth 2009, pet. denied).

When the Keys filed this case in district court in 2013, Smith did not move to compel arbitration, waiting instead for five years until December 12, 2018 to do so. In the interim, Smith sought dispositive relief from the trial court by filing their Motion for Partial Summary Judgment on October 28, 2013 (seeking summary judgment that the Keys take nothing on their declaratory judgment action), their Second Motion for Partial Summary Judgment on October 27, 2014 (seeking summary judgment on the Keys' claims for violation of the DTPA, for declaratory relief, and for fraud), and their No-Evidence Motion for Summary Judgment on November 14, 2014 (seeking summary judgment on the Keys' claims for DTPA violations, fraud, and violations of the Texas Debt Collection Practices Act). Smith specifically urged the trial court to resolve these merits-based issues before deciding the certification of the class.[7]

Filing these summary judgment motions addressed to the merits of the Keys' claims, and urging the court to determine the merits weighs in favor of implied waiver of arbitration. *See BBX Operating, LLC v. Am. Fluorite, Inc.*, No. 09-17-00245-CV, 2018 WL 651276, at \*6, \*8 (Tex. App.—Beaumont Feb. 1, 2018, no pet.) (mem. op.) ("A party's request for affirmative relief is an important factor in determining whether

---

[7]On December 9, 2014, the trial court stayed hearings on the motions for summary judgment until after the class certification ruling was made.

a party has substantially invoked the judicial process."); *see also Hogg*, 480 S.W.3d at 786.

In 2015, the focus of the case shifted to the class certification issue. On May 26, 2015, this issue was heard, and Smith's counsel made the above-referenced statements about having decided not to arbitrate and about the apparent finality of that decision, i.e., "Thus, [the Keys'] claims, **which are no longer subject to compelled arbitration**, . . . ." [Emphasis added.] On October 15, 2015, the Court signed its Order Certifying Class Action with Trial Plan, which led to our opinion in *Smith 1*.[8] Smith and A-1 appealed our decision in *Smith 1* to the Texas Supreme Court, which denied both the petition for review and the motion for rehearing, the latter being denied on November 16, 2018.

With the class-certification appeal concluded, the trial plan was ripe for implementation. The plan provided for the Keys or class counsel to bear the expense of notifying the class, consisting of 36,889 members, a substantial number and expense to say the least. On December 21, 2018, less than forty days after the motion for rehearing on the class certification was denied by the Texas Supreme Court, Smith filed their Motion to Amend Class Definition or Motion to Compel Arbitration. The essence of these motions was that 22,258 of the class members had arbitration clauses

---

[8]The trial plan did not address the issue of arbitration. As noted in our opinion in *Smith 1*, Smith and A-1 had failed to prove the existence of arbitration agreements with the class members. 527 S.W.3d at 627.

in their contracts with Smith and that the trial court should either remove them from the class definition to respect the contractual right to arbitration or order them to arbitration pursuant to the arbitration agreements. In this motion, Smith also pivoted regarding their position on arbitration of the Keys' individual claims, which were suddenly not "no longer subject to compelled arbitration." The Keys opposed this combined motion. Smith also filed a Motion to Modify Class Definition on May 26, 2021. However, no hearing on these motions occurred until July 15, 2021.

On January 30, 2020, the Keys filed their Motion to Shift Class Notice Costs to Smith. This motion proposed to shift the costs of giving the class notice from the Keys to Smith, which would add a substantial cost to Smith.[9] Both sides filed pleadings opposing the other side's motions. On June 5, 2020, the court heard the Keys' Motion to Shift Class Notice Costs to Smith, which the court granted by order signed on June 24, 2020, thereby modifying the trial plan. After suffering this costly defeat, Smith set for hearing their Motion to Amend Class Definition or Motion to Compel Arbitration. However, the trial court denied these motions, too.

How does this course of conduct impact the implied waiver argument regarding the Keys' individual claims?[10] In simple terms, it clinched the argument.

---

[9]As noted by Smith's counsel in their reply brief, "The Court's exercise of jurisdiction and consideration of this appeal is significant because of the Order Directing Defendants to Pay Costs of Class Notice currently in the trial court below."

[10]While we are only deciding the issue of implied waiver as to the Keys' individual claims, it is impossible to avoid discussing the class situation. The driving

21

Smith had clearly adopted a judicial forum strategy until they lost the appeal of the class certification. At that point, what had been a judicial forum strategy that had been clearly articulated to the court, reversed course, and became an arbitration strategy not only as to the Keys' individual claims but also as to the class claims. In fact, the cost issue, as it relates to reducing the class size based on arbitration, was the driving force as evidenced in the motions and responses presented to the trial court. It was the cornerstone of the motion to amend the class definition. By excluding from the class definition those class members who allegedly had arbitration provisions in their contracts, Smith contended that the arbitration provisions could be respected and the cost of the class notice could be substantially reduced. Alternatively, Smith contended that the class claims should be referred to arbitration. Along with this large dispute on the class membership and arbitration, Smith also asked to arbitrate the Keys' claims, which it had previously represented to the court were "no longer subject to compelled arbitration."

Smith's strategy represents a classic situation of "inherent unfairness" by way of a party attempting to "have it both ways by switching between litigation and arbitration to its own advantage." *BBX Operating*, 2018 WL 651276 at *8 (quoting *Perry Homes*, 258 S.W.3d at 597). As we said in *Haddock*, "waiver may be found where a

---

force for the procedural events derived from the much bigger issues of class arbitration and class costs. The Keys' individual claims were just part of the milieu. We express no opinion on implied waiver of arbitration related to the class claims.

party has tried and failed to achieve a satisfactory result before turning to arbitration." 287 S.W.3d at 179. "Indeed," we added, "failing to seek arbitration until after proceeding in litigation to an adverse result is the clearest form of inconsistent litigation conduct and is inevitably found to constitute substantial invocation of the litigation process resulting in waiver." *Id.* at 180; *see also Hogg*, 480 S.W.3d at 789–90.

Such is precisely the case here regarding the Keys' individual claims. Smith invoked the judicial process in its dispute with Joe Key in justice court, which is still ongoing. Smith pursued a judicial forum strategy for over five years in this proceeding while seeking disposition on the merits of the Keys' claims from the trial court and represented to the court that they had made a decision not to invoke arbitration against the Keys' individual claims and that such claims were beyond being judicially compelled. Smith only attempted to invoke arbitration after it became apparent that the judicial process was leading to an undesired result. This conduct clearly was a significant invocation of the judicial process, and it was prejudicial to the Keys. The trial court did not abuse its discretion in denying Smith's Motion to Compel Arbitration. *See Perry Homes*, 258 S.W.3d at 597; *Hogg*, 480 S.W.3d at 796; *Haddock*, 287 S.W.3d at 180–81; *BBX Operating*, 2018 WL 651276 at *8. We overrule the portion of Smith's issue.

2.      Arbitration with Class Members (excluding the Keys)

The trial court entered a general order denying the motions and did not make findings of fact or conclusion of law. Therefore, as the reviewing court, it is our duty

to affirm the trial court's ruling if there is a sufficient basis under any legal theory asserted in the trial court. *See Amateur Athletic Union of the U.S., Inc. v. Bray*, 499 S.W.3d 96, 102 (Tex. App.—San Antonio 2016, no pet.). To do so, we look to the objections raised by the Keys in the trial court upon which the order could have been based. *See id.* at 103.[11]

The Keys objected to the Motion to Compel Arbitration against the class members because the issue of arbitration was not ripe as to the class members. The Keys cited no authority specific to the question of potential-but-unasserted arbitration claims against members of a class who have not yet been given notice of the class action and have not yet been given the opportunity to opt out. The Keys did cite to general principles of ripeness such as justiciability and conservation of judicial time and resources for real and current controversies rather than abstract, hypothetical, or remote disputes. *See Perry v. Del Rio*, 66 S.W.3d 239, 249 (Tex. 2001); *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998); *Mayhew*, 964 S.W.2d at 928; *TCI West End, Inc. v. City of Dallas*, 274 S.W.3d 913, 918 (Tex. App.—Dallas 2008, no pet.).

---

[11]Although the Keys raised ripeness in the trial court, they did not raise it in their Appellees' Brief, despite Smith addressing it in anticipatory fashion in their Appellants' Brief. It is immaterial that the Keys did not address this in their Appellees' Brief since ripeness is an element of subject matter jurisdiction and can be raised even sua sponte by the court. It is a legal question subject to de novo review. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).

The most directly relevant case cited by the Keys was *Edwards v. Schuh*, 5 S.W.3d 829, 831–32 (Tex. App.—Austin 1999, no pet.). Edwards had contracted with Lasner to build three warehouses, and their construction contract had an arbitration agreement. Schuh purchased one of the warehouses and sued Edwards for defects in the construction. Lasner was not a party to the case, but Edwards filed a motion to compel arbitration with Lasner. The trial court denied the motion, and the court of appeals held that there were no justiciable claims yet between Edwards and Lasner, so the trial court had not abused its discretion. From this case, the Keys argued that since the class members had not yet been given notice with an opportunity to opt out, there was no justiciable controversy for the court to decide because whether any of them would remain as class plaintiffs or opt out made the issue hypothetical.

We have found no Texas cases which address this situation. We decided *Smith 1* under Texas Rules of Civil Procedure 42(b)(3), which was based on Rule 23, Federal Rules of Civil Procedure. Cases interpreting Rule 23 are persuasive authority. *McAllen Med. Ctr., Inc. v. Cortez*, 66 S.W.3d 227, 232 n.1 (Tex. 2001). We, therefore, can look to the federal case law for guidance. In *De Leon-Granados v. Eller & Sons Trees, Inc.*, the court noted that "in a Rule 23(b)(3) class action, all qualifying class members become party-plaintiffs unless they opt out of the action." 497 F.3d 1214, 1219 (11th Cir. 2007). Further, in *N. Sound Capital LLC v. Merck & Co., Inc.*, the court held that "[f]or class actions seeking predominantly damages, Rule 23 adds that putative class

25

members do not become party plaintiffs until the time to opt out has elapsed." 938 F.3d 482, 492–93 (3d Cir. 2019). Based on these principles, class members become party-plaintiffs only after the class has been certified and only if they do not opt out before the "opt-out" period passes.

Two other facets of class-action law are consistent with this conclusion. First, the United States Supreme Court, in its landmark decision regarding tolling of limitations on individual claims pending class certification, stated,

> During the pendency of the District Court's determination [whether to approve the class action status], which is to be made ["]as soon as practicable after the commencement of an action,["] potential class members are mere passive beneficiaries of the action brought in their behalf. Not until the existence and limits of the class have been established and notice of membership has been sent does a class member have any duty to take note of the suit or to exercise any responsibility with respect to it in order to profit from the eventual outcome of the case.

*Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 552, 94 S. Ct. 756, 765 (1974). Texas class action law is also consistent with this concept. Before certification, suits brought as class actions are governed by rules of procedure applicable to lawsuits generally rather than those specific to class actions. *Am. Online, Inc. v. Williams*, 958 S.W.2d 268, 273 (Tex. App.—Houston [14th Dist.] 1997, no writ). Before a suit is certified as a class action by the court, the case is treated as if it were brought by the named plaintiffs suing on their own behalf. *Id.* Consequently, potential class members do not have an interest in the litigation unless and until the class is certified. *See Am. Express Travel Related Servs. Co., Inc. v. Walton*, 883 S.W.2d 703, 707 (Tex. App.—Dallas 1994,

no writ) (where the trial judge, who was an American Express cardholder, was held not to be disqualified from ruling on class certification since the judge did not have an interest in the litigation until the class was certified).

Second, the attorney client relationship does not arise in an "opt out" class action until the class has been certified, notice to class members has been given, and the "opt out" period has passed. We have not been cited to any Texas cases which specifically address this point, nor have we found any. However, one Texas case addresses part of this equation. In *Gillespie v. Scherr*, the court was faced with a class action that had never been certified, and several potential class plaintiffs had sued the named plaintiffs' lawyers for legal malpractice for not having included them in the named plaintiffs' settlements. 987 S.W.2d 129, 132 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). In affirming the trial court's summary judgment in favor of the lawyer defendants, the court held,

> Moreover, a class action may be maintained as such only by order of the trial court. *See* TEX. R. CIV. P. 42(c)(1). Until a trial court determines that all prerequisites to certification are satisfied, there is no class action, the case proceeds as an ordinary lawsuit, and attorneys for named class members have no authority to represent or otherwise act on behalf of the unnamed class members. Under these circumstances, **we decline to hold that named plaintiffs' attorneys owe a precertification duty to unnamed class members**. We therefore overrule appellants' first point of error and need not address appellants' second and third points of error concerning breach of duty and existence of damage.

*Id.* (emphasis added)

27

Since the *Gillespie* court was dealing with an alleged but uncertified class, not a class action certified as an "opt-out" class, it dealt only with pre-certification duties. To address the situation where a class action is pending, we find support in *The Kay Co., L.L.C. v. Equitable Prod. Co.*, 246 F.R.D. 260, 264 (S.D. W. Va. 2007). There, the named plaintiffs' attorneys sought an order prohibiting defense counsel from communicating with putative class members. For guidance, the court looked to the ABA Commission on Ethics and Professional Responsibility: "A client-lawyer relationship with a potential member of the class does not begin until the class has been certified and the time for opting out by a potential member of the class has expired." *Id.* (citing ABA Comm. on Ethics and Pro. Resp., Formal Op. 07–445 (2007)). The court went on to hold that communications between defense counsel and putative class members did not violate West Virginia ethical rules in denying the protective order. *Id. see also Walney v. Swepi LP*, No. CV 13-102 ERIE, 2017 WL 319801, at *13 (W.D. Pa. Jan. 23, 2017) ("The majority rule is that . . . absent class members are not represented parties prior to class certification and the expiration of any opt-out period.").

Applying the rationale of these authorities, we hold that the class members under the trial court's certification order in this case were not party plaintiffs at the time of the hearing on Smith's Motion to Compel Arbitration. They had no obligation to do anything regarding the case since they had not been given notice and because the "opt out" period had not expired. Smith had not asserted claims against them, and

28

they had not asserted claims against Smith. Whether any of them would opt out of the class after receiving class notification was pure speculation. Thus, we hold that there was no justiciable controversy between Smith and the class members at the time the trial court denied Smith's Motion to Compel Arbitration. There being no justiciable controversy, the court had no jurisdiction to order arbitration with the class members, so it follows there was no abuse of discretion in denying the Motion to Compel arbitration. We overrule this remaining portion of Smith's issue.

## IV.    Conclusion

Having held that we have no jurisdiction to hear Smith's interlocutory appeal of the trial court's order denying their Motion to Amend Class Certification, we dismiss that portion of the appeal for want of jurisdiction.

Having held that Smith expressly waived their right to arbitrate the Keys' individual claims or, in the alternative, impliedly waived their rights to do so by virtue of their litigation conduct, we affirm the portion of the trial court's order denying their Motion to Compel Arbitration as to the Keys' individual claims.

Having held that the trial court did not abuse its discretion in denying Smith's Motion to Compel Arbitration with the class members, we affirm the portion of the trial court's order denying their Motion to Compel Arbitration as to the class members.

We order the case remanded to the trial court for further proceedings not inconsistent with this opinion.

29

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  April 14, 2022